Good afternoon, Your Honor. It's Christopher Johns for the defendant, Maximino Sordo. Counsel? Yes, Your Honor. Talk into your notes rather than us. Thank you, Your Honor. The first issue, Your Honor, that I'll address is the free-level enhancement for a brandishing of a knife under Section 2B1, 1B2E that the district court found. The problem with this enhancement and the district court's decision was that it wasn't based on any evidence. Tell me if I've got the facts right. If I remember your case right, this was the robber who needed a Hertz Never Lost. He couldn't find the location where he was supposed to stick up the jewelry salesman. That's correct, Your Honor. But the jewelry salesman says he did stick him up and broke the window and pointed the knife at him. Well, he didn't say he stuck him up, and that wasn't evidence that the court relied on. What the court relied on was that he had a hearing and made findings, but she didn't. And why isn't it enough that she said, well, this kind of robbery, these people have been associates for a long time. They know what's going to go down, so we could anticipate the use of the knife? Because it precludes meaningful judicial review. Because under the statute, she's required to make those findings, and she didn't make them. Why does it preclude review? Why can't we just decide whether it's reasonable for her to conclude that? How is this Court to know what the findings are? This Court then would be simply implying findings by the district court. And it's the district court is the only court who's going to know what he or she, in fact, based the decision on. What do you practically expect if we send it back? I expect that we'll have a hearing, that there'll be some challenges, and hopefully there'll be a different result. What facts did your client admit when he pleaded guilty to the conspiracy? He only pled guilty to the conspiracy. He pled guilty to the overt facts. What was the factual basis to which he agreed? In the indictment, at the excerpt of record, pages 12 through 14. I'm not asking where it is. What were they? Well, they're clearly laid out, and there's not a record. What are they?  One, there was a conspiracy. Please listen to the questions. It'll be helpful. Okay. One, there was a conspiracy. Two, they rented an automobile. Three, there was a heist of $487,000. Four, when it occurred. And five, in the course of the robbery, someone punctured a tire. And five, they were found at this Holiday Inn Express Hotel. Those are the overt facts. Was he asked what he personally did during the plea colloquy? No, Your Honor. He just pled guilty, and that was it. So we have nothing here on this record where the defendant made an admission. Nobody took the normal factual basis for the plea in this case, is what you're telling me. Well, the normal factual basis for the plea is going to be based on the indictment. And the indictment didn't include the enhancing fact that he personally did. What I'm getting at is in the Rule 11 colloquy, they usually ask somebody, and factually, what did you do? Or do you agree with this factual recitation? That wasn't done? You're saying he just pleaded the indictment? There was a factual recitation, Your Honor, but there's not one that includes this fact. This, you know, the the the the the the the the the the the the the the the the the Well, your other point is that there's no enhancement available for just the nature of the robbery itself. The Zelaya case seems to preclude that. That's correct, Your Honor. The next point he asked, when when the judge said, what did he do at the at the change of plea, did he tell a story about how he could never did find the place where there was both. That's correct, Your Honor, he did. He did. So he admitted conspiring, but not to break in the window. That's correct, Your Honor. There's no doubt that that he was involved in the conspiracy. He's plied to that. You don't argue that your client got 61 months. It was 60 months, Your Honor. A co-conspirator only got 50. Co-conspirator. Why did you argue that? I'm sorry, Your Honor, I didn't hear the last part. Why didn't you argue that point? Well, the discrepancy between two co-conspirators doing exactly the same thing, wouldn't get 10 months more than somebody else. It was 9 months, Your Honor. It was 51 months for the co-conspirator. It was 60 months for my client. And the reason was my client had an obstruction where he had lied. And so that gave a different sentencing range. First I know. Well, Your Honor, I can't change those facts. I mean, he did something that there was a two-level enhancement for. What did he lie about? His identity. And that was clearly wrong, and he's admitted to that. So he gets a two-level bump. So that puts him in a different sentencing range than the co-defendant. The next point is, Your Honor, I believe that the district court erred in failing to conduct an evidentiary hearing about the amount of loss. Well, the problem I have with that is you never suggested anything that undercut the estimate of the value. You simply said you wanted an evidentiary hearing. Did you come forward with anything suggesting that the jewels were worth less than the $400,000, or did you just say I want an evidentiary hearing? They said that they wanted an evidentiary hearing. The judge asked why. And what was the answer? There was some brief reference to it, because they were involved in a colloquy and it came down like this. The judge said, why do you want to why are you asking this question? And he said, because we think we might want an evidentiary hearing. And the judge said that. You've got to come forward with it. There's an abuse of discretion standard. And don't you have to come forward with some evidence that the valuation might be wrong? I mean, if you just say we want an evidentiary hearing, the judge said why. And you said we want an evidentiary hearing. The reason he said he wanted an evidentiary hearing was he wanted to utilize the great tool of cross-examination on the victim, witness, and on the co-defendant. And he also Did they say that? Yes, they did say that. But you had no evidence that the valuation figure itself was wrong. Well, there had been some discussion about Godinez testifying beforehand. Was Godinez related to your client? He was the co-defendant. Was he related family-wise? Not anything in the record reveals that, Your Honor. The whole purpose of an evidentiary hearing is to provide a reasonable opportunity to present evidence. You can present evidence by way of cross-examination. Well, then why is the standard an abuse of discretion? The point is if you don't have anything to engage in evidentiary hearing, there's no need to have one. Well, an evidentiary hearing just simply isn't for the purpose of cross-examining people unless you've got something to talk about. There was one other aspect that was brought up, and that was with regard to having an evaluation done, which is why they brought up the idea of having an evidentiary hearing, so they could have these jewels independently evaluated. And that was brought up and was not permitted. Counsel, as I recall, what you do to get an evidentiary hearing and findings is you say, here are the points in the pre-sentence report that are disputed. Where's the document? I'm trying to identify exactly what was disputed about the jewelry value and about the knife. Well, what was disputed was the $400,000. And the counsel made a comment in discussing this with the district court that he wanted to have an evidentiary hearing, and she said, I'm not inclined to do that. Was there also a request for an evidentiary hearing on whether Sordo really did use the knife to break the window and threaten the victim? There's no evidentiary hearing on that. I didn't ask that. I asked whether there was a request for an evidentiary hearing on that. No, I don't believe there was on that point, Your Honor. I think what was the point was made was that case law was cited indicating that this enhancement could not be applied under these facts. Here's what I'm getting at. When I was a district judge, there would be a pre-sentence report, and that's going to be it. Those are going to be the facts of sentencing. Unless the defendant says, or the government says, that's not true. Paragraph 78, or whatever it is, is not true. And then they'd put in a sentencing brief, and they'd say, Paragraph 78 isn't true. I want an evidentiary hearing and a finding of fact on whether it's true or not. And then we'd have an evidentiary hearing, and I'd make a finding. And I just looked, again, at the trial brief, or I mean the sentencing brief, and I didn't see where it said that, but I could have overlooked it. Is there some place that I can look where it says, it's not true that it was a $487,000 jewelry heist. We want a hearing so we can determine a value. And I gather it's already conceded that at no point did the defendant say, it's not true what the pre-sentence report says, that I broke a window and threatened a victim with a knife. I want an evidentiary hearing on that. I think that's correct, Your Honor. If I could just make one point, my time's almost up. I did give an additional citation, United States v. Blandin, it's 435 F. 3rd at 1191. And the reason that I cited this was that there's some question as to whether or not Crawford applies to sentencing. And certainly, this decision indicates that Crawford does apply to sentencing, although it's not a holding, because they didn't make that holding, because it dealt with a plain error analysis and they found that it was harmless. But the Court clearly says, Blandin argues the district court erred by relying on a contested statement of PSR when denying his request for a downward adjustment. Accordingly, Blandin, the statement was improper, a testament of hearsay in violation of the Sixth Amendment, citing Crawford. And then the Court says he failed to meet his burden of plain error, referencing Crawford. And that's what I thought was important to bring to this panel's attention. At 17 seconds, if I might try to find a second. Roberts. Thank you, counsel. May it please the Court. My name is Kyle Waldinger, and I'm an assistant United States attorney here in San Francisco. Judge Ferguson, I'd like to address your question first about the discrepancy between the two defendants. I think that counsel addressed that, but I just want to make clear the difference between the 60 months that Mr. Sordo got and the 51 months that Mr. Godinez got is based on Mr. Sordo's provision of a false name to the probation officer. For that, he got a two-point enhancement for obstruction of justice. The district court judge, Judge Wilkin, specifically noted that all of the other enhancements that Sordo got, she'd given to Godinez, and she specifically said that the difference was Mr. Sordo's provision of a false name to the probation officer. Was there any actual harm that flowed from a false identification to the probation department? I mean, what was he trying to cover up, if anything? What was the harm that flowed from that? Well, that enhancement's not challenged on appeal, but I'm asking you, was there any harm that flew from it? Well, I would say that the harm, Your Honor, is the real one. Was there any actual harm? Was he trying to cover up a prior or something like that? He was trying to show that he was from Mexico, Your Honor, when he's actually from Colombia. And I would say that, well, he was trying to show that he was from Mexico. And if he's from Colombia, he's going to get hit harder than if he's from Mexico? He's going to be deported to Mexico rather than Colombia, and it's going to be easier to come back to the United States. But this Court's case law makes clear that there's no harm. Yeah, I know. I'm just asking if there's any harm. In other words, the guy didn't – the guy wasn't hiding seven priors. Not that we know of, Your Honor. Okay. You concede that the judge was wrong in assessing the enhancement just on the basis of a Hobbs robbery? I read the Zelaya case, and it gives you a lot of trouble, doesn't it? It does, Your Honor, but I think that the Zelaya case is distinguishable on a number of grounds. The Zelaya case was a bank robbery case, and the court there said that the judge must base findings on something more than the nature of bank robberies in general. Here, we're talking – How is that different from a Hobbs robbery? Well, a Hobbs act robbery can be committed in only one of three ways, either actual or threatened force, violence, or fear of injury. That's different than a bank robbery, which can be committed by intimidation alone. And this Court's case law makes clear that in a bank robbery, intimidation does not mean that the victim actually has to be placed in fear. It just means – That's the key element of a bank robbery is intimidation? That's not the key element. But I think it's the least violent form of a way that a bank robbery can be committed. And so I would say that if a bank robbery is committed with force or violence, that it would be reasonably foreseeable that a dangerous weapon would be brandished in that. A pretty thin distinction, though, isn't it, between Zelaya and this case? It's a pretty thin distinction, but it's enough of a distinction to make a difference, especially given the nature of the enhancement in Zelaya, which was an express threat of death, and the enhancement here, which is a dangerous weapon. The way that express threat of death is defined in the Guidelines is just that, an express threat of death, as opposed to a dangerous weapon. To get a dangerous weapon enhancement, one need not show that a dangerous weapon was actually brandished. One only needs to show that somebody did something, brandished something that closely resembled an instrument capable of inflicting death or used an object in a manner that would create the impression that the object is a dangerous weapon. If we disagree with you that the difference between Zelaya and this case is somehow dispositive, don't we have to send it back to the trial court for further findings? I don't think that you do, Your Honor. I think that there is evidence in the record that the district court recognized, although the district court did not. Deliberately paid no attention to. It's set aside, but I think that there's evidence in the record that supports the conclusion that the district court. If the conclusion was not made, you're asking us now to become the sentencing court, aren't you? Trial court didn't do it. The appropriate function is to have the trial court do it. Isn't that right? That's correct, Your Honor, but I think that looking at the evidence that is in the record, one, this court can make a harmless error now. Harmless error? Yes, Your Honor. That's what the cases say with respect to misapplication of the guidelines. Did you argue that this was subject to harmless error review? I did not, Your Honor. That comes from the recent case after the briefing in Cantrell. Counsel, as a matter of law, only as a matter of law, how does a district court judge determine whether or not something is reasonable, and then how does the circuit judge determine whether or not the district court judge was correct in his determination? Well, the way that – When there's no evidence presented as to what is reasonable. If you have a trial, you know you have evidence of a reasonable man. But what is reasonable in the context of sentencing? Something that the judge thinks is reasonable, or is there – or must there be some sort of evidence that indicates that his decision is reasonable? Well, I think that a district court judge can base it on evidence. Here, as we admit, the district court did not really rely on any evidence. The district court relied only on the elements of the evidence. I'm not talking about this case. I'm talking about, remember what I said, as a matter of law, how does it – how – what process does a district court judge go through in sentencing somebody to determine whether or not his sentence was reasonable? I think that there are – Does he ask another judge? Does he hold a conference with other judges? Or what does he do? I think that the judge looks at the facts, looks at the case law, can look at the evidence, or, as this Court recognized, and this case is cited in the government's brief, in this Court's decision in Lipsy, you can look at the elements of the offense. And in Lipsy, which was an armed robbery conviction, this Court said that based on the elements of the offense, it is reasonably foreseeable to the defendant that a gun would be brandished in an armed robbery. See, I'm concerned about the fact that we have two conspirators. One got 60 months and one got 51 months. And in each case, the judge held that his sentence was reasonable. Now, how in the world did he go about making that determination, and how in the world do we go about determining whether or not his determination was reasonable? Well, Judge Wilkin in this case sentenced the other defendant to 51 months because that was within the guideline range based on enhancements that were admitted by that defendant. And then Judge Wilkin sentenced this defendant by giving the same enhancements sought by the government against the co-defendant and by giving an additional enhancement for the obstruction of justice. The guideline range, I think, was 57 to 71 months, and Judge Wilkin gave a sentence of 60 months. So as the government has argued in its cases before this Court since Booker, the guideline range is presumptively reasonable, and that's where this Court should start in determining whether a sentence was reasonable. I guess the question that's before Your Honors today is whether Judge Wilkin's calculation of the guidelines themselves were reasonable. We think that based on the elements of a Hobbs Act robbery, which requires at the very least that a victim be put in fear of injury, that it would be reasonably foreseeable to Sordo that a defendant or that a co-conspirator would brandish  We've got a case in which there's two reasonablenesses, and how do we decide which is reasonable and what was not reasonable? You know, that, Your Honor, I think that's a difficult question to ask. I think reasonableness is a term that often, if you look it up in the dictionary, it's going to end up you're going to end up right back where you started from. And I don't Is there a case that says we look up the law in dictionaries? No, but we try to find what reasonable means however we can. I think in this case But we've got a case here and we're showing that there are two different kinds of reasonablenesses. One is 50 months and one is 61. But there's a difference between these two defendants in that What was the difference? The difference is that the defendant that's here before you today lied about his name to the probation officer and got a two-point enhancement for obstruction of justice. If this defendant had not done that, he would be in the same guideline range as the other defendant and would likely have gotten the same sentence. But the differences are accounted for in the calculation of the guidelines, and the obstruction enhancement is not at issue. May I ask you a couple questions about the valuation of the jewelry? Yes, Your Honor. The defendant got a three-level enhancement because the value of the jewelry was over $250,000. Is that right? That's correct. What evidence was there in the record as to the value of the jewelry, supposedly $400,000? What established $400,000? The United States submitted with its reply brief and sentencing, which I believe is in the supplemental, in the government's excerpts of record, a statement, a signed statement by the victim to the case. The salesperson from whom the jewelry was taken? That's correct, Your Honor. Was there any background stuff from the business for whom the salesman worked or any receipts? Is there any evidence as to how much he'd paid or somebody else had paid for this? I mean, it's notorious that jewelry is marked up beyond cosmetics. That's true, Your Honor. And I – but I think this Court's cases say that the market value is a legitimate value to use. So that – is that all you had, the salesman saying it was worth $400,000? Why didn't anybody ask him, can you back that up? Where are the receipts? Give us some definitive stuff. I don't know whether that was done or not. The evidence showed that those victims came from out of the country, and I don't know whether the – No, my straight answer to that is, so what? You're trying to put a person in prison. Right. You should have some evidence. The other evidence that the district court relied upon for the $400,000 figure, Judge Trott, was not only the victim statement, but the fact that the co-defendant agreed that that was the amount of money. How does the co-defendant robber know how much the jewelry is worth? Because they go and sell it, Your Honor. Did he say, I sold it for $400,000? No. Why did he sell it for? We don't know. You don't know? So he just said, I agree, it was $400,000? That was part of a plea agreement. Right. Which – That counts for nothing. The robber said it was worth $400,000. I'm not sure why it counts for nothing, because it was not a sweetheart plea agreement. It was the guideline calculation that the government is seeking against Mr. Sordo. Presumably – Don't you think it's kind of counterintuitive to use the confession from one crook as to how much money we stole from the victim against another crook? Well, I guess it's counterintuitive to think that the district court would have gotten much help from calling the co-defendant to testify. My point here is – my point here is that Judge Kleinfeld is correct in Sordo's objections to the pre-sentence report. There's no mention of this, and there's no request for an evidentiary hearing. But then during the sentencing hearing itself, he does say that he wants an independent valuation of these diamonds, what the jewelry was worth at the time. Wouldn't – wasn't that appropriate? It's not, Your Honor. Here in this case, the government came forward with evidence as to what the valuation of the jewelry was. The defendant came forward with no facts in rebuttal. The district court is not required to hold an evidentiary hearing every time a defendant just says, I disagree. Clear something up here. What would be nice is if the jewelry was handed over to an appraiser, he goes through or whatever they keep it in, and says, it's about this much wholesale, this much retail. Right. Did the government get the jewelry back? No. We don't have the jewelry. We can't take it. So the robbers took the jewelry, and the jewel – and the wholesale salesman, the jewelry store never saw it, and the salesman lost it to the robbers and never saw it again? That's correct. And the government never got it? That's correct. So what – about all we can have, then, is what the Hong Kong manufacturer or distributor says and what the salesman say? That's correct, Your Honor. We don't even have what the distributor says. Well, they are the distributors, Your Honor. I think that the complaint in this matter talked about how these jewelry salesmen come from overseas and visit jewelers directly and sell. Do they own the jewelry? Yes, they do. They represent the company. So did they pay $400,000, $300,000? How much did they pay for it? Well, they represent the manufacturer. They come from the manufacturer of the jewelry. So was this a wholesaler or retail valuation? The people that were robbed were wholesalers. Who was the robber who said, I agree, it's $400,000? He's identified as Godinez, Your Honor. As Godinez. And that was part of a plea that he admitted was worth $400,000? That's correct, Your Honor. Was it a plea bargain? It's the same guideline calculation that the government ---- It's a plea bargain. The only plea bargain ---- He get anything in return for the plea. The government agreed to recommend a sentence no higher than the midrange. So that's why that figure is suspect. He bought into a plea bargain. He didn't say it's worth $400,000. That's tantamount to simply agreeing, okay, I'll buy that so I can get what the deal is. That's not worth anything as a valuation. Well, I disagree with that, Your Honor. For a number of reasons. You're not in a good position to disagree with it, but go ahead. There's a ---- the guidelines enhancement here jumped up to three levels at $250,000. I'm not sure why the defendant would agree that it was worth $400,000 when he thought it was actually worth $251,000. Because you offered him a deal. Again, I ---- He agreed not to contest it is what he really boiled ---- what it boils down to. I mean, the government commonly recommends the midrange of a sentence. This was not. There's nothing wrong with what you did, but I'm saying simply from trying to use that as a way to peg the value of jewelry is pretty weak. Well, the guidelines ---- Just ask the robbers to give it back. They wouldn't give it to an appraiser. We tried that, Your Honor. I mean, the guidelines do tell us with respect to coming up with an amount of loss is that the district court just has to make a reasonable calculation of the loss. Why shouldn't he have been accorded an evidentiary hearing when he said he wanted one so he could get an independent valuation? Was it too late? Is that what you're arguing? Well, I think Judge Klainfelder just indicated that. I mean, what kind of independent evaluation is the government going to be able to come up with when we don't have the jewelry? So if an evidentiary hearing had been called and the district court said, government, bring in an independent evaluator if you want, I don't think the government would have. We would have relied on the same evidence we relied upon before, presumably or maybe the defendant would have brought in his co-defendant who would say that the jewelry was really worth less than $400,000. I don't know how they could get that. They could get an insurance company to say this wholesaler always bumps it up when they lose it. We don't know. I mean, this is a Hong Kong case. Well, it's a Hong Kong company, so it's questionable whether we can even get anybody from the Hong Kong insurance company or from the Hong Kong company to come. So I think that's the question. Who has to prove the figure? The government. It's the government's burden to prove the figure. But your problem, not theirs. That's right. And I think, Your Honor, that the government did prove it. It came forward with evidence from the victim saying that this jewelry was worth $400,000. I think that's enough, especially in light of the fact that the defendant It might be, but it might not be enough to prevent an evidentiary hearing to test that. First of all, we think that the defendant didn't clearly ask for one, but I don't think, even if the defendant did, that the district court abused her discretion in not granting an evidentiary hearing in this case. I guess the defendants could say, yeah, it was junk, it was trinkets. We took it to the fence. We only got $40,000, and you get 20 cents on a dollar, it's only $200,000. Right. I mean, I don't know. Believe me, you know, jewelry is subject to markup, and I think that in these cases that the robbers sell it for much less than it could actually retail for. So, you know, I don't know. I think it's a reasonable estimate of the loss based on what the victim said. There's a lack of – there was nothing that was given in response by the defendant, only that he thought the government had to prove that loss by – by beyond a reasonable doubt. That was really the genesis of why the defendant was asking for an evidentiary hearing here. He was taking the position at sentencing that the government had to prove all these enhancements up beyond a reasonable doubt. This was post-Blakely, pre-Ameline? This was after – this was after Booker, the defendant was still making this argument. Okay. We've gone way over your time, so unless my colleagues have more questions, I'll let you sit down. Thank you, Your Honor. Thank you, counsel. I only have 20 seconds, Your Honor, so I want to give you the citations to the record that you asked me about. First of all, Defendant Sordo did file an objection to the pre-sentence report. It's at the excerpt of record at 0034, and at page 0035, he makes his objection to the adjustment for brandishing a dangerous weapon. Yeah, but where does he say anything about the valuation? He doesn't say that, Your Honor. He doesn't. And he doesn't ask for an evidentiary hearing on that either. He did not, Your Honor. Waits until the time of sentencing. That seems tardy, not timely. The other point that I wanted to cite to the record because the Court asked was with regard to the Rule 11 colloquy. And it's the Rule 11 colloquy, they never brought up brandishing a weapon. It's not there. That was on September 29th, 2003, and it's at the excerpt of record, starts at 0160. But the specific page reference is 0167 through, I think it's 0174. And that clearly goes through. There's not a reference to this. And there are even some objections made there as to what they were agreeing to. And the Court said, I find that there's sufficient factual basis for the conspiracy. But there's no reference there to brandishing a weapon. He didn't agree to that. And finally, Your Honor, the question was raised with regard to what happens when we have an error in the sentencing. This Court's decision in United States v. Cantrell makes it very simple. It's remanded. Roberts.
judges: Ferguson, Trott, Kleinfeld